REQUESTED BY: M. Berri Balka, State Tax Commissioner Allen J. Beermann, Nebraska Secretary of State
You have requested our opinion on several questions relating to the interpretation of the Nebraska Supreme Court's opinion in MAPCO AmmoniaPipeline Co. v. State Bd. of Equal., 238 Neb. 565, 471 N.W.2d 734 (1991) ["MAPCO"]. Your questions pertain to the nature and scope of the remedy or relief to be afforded by the State Board pursuant to the mandate entered by the court in MAPCO and several companion cases.
At the outset, we note that the court's opinions in MAPCO and the various companion cases decided in conformance with the decision in MAPCO
do not, in our view, provide any clear directive to the Board as to the relief or remedy to be provided to the taxpayers on remand. As you are aware, this office, at the request of the Governor, filed a motion for rehearing in MAPCO and its companion cases requesting the court to grant rehearing to clarify the nature of the relief or remedy to be provided by the Board as a result of the court's opinions and orders in each of these cases. The court denied the motions for rehearing filed on behalf of the Board, thus leaving the Board with only the guidance provided by the court's original opinion in MAPCO and the opinions rendered in the companion cases.
Prior to addressing your specific questions, we believe it would be helpful to the Board to provide a brief review of what we believe to be the pertinent provisions of the original opinion in MAPCO relative to the remedial issues which you have raised. After providing this background, we will address, in turn, your questions regarding the effect of the court's declaration that the exemptions in Neb.Rev.Stat. §77-202(6)-(9) and (11) (Reissue 1990) are unconstitutional, and the effect of the court's determination that the proper remedy to be afforded the taxpayers is not "equalization" of their property at zero percent of its value.
I. The Mapco Decision.
In Mapco, the "court reversed the order of the State Board denying the taxpayers claims for property tax relief for tax year 1990, and remanded the cause to the State Board" with directions to assess the property of the appellants and equalize its value as required by article VIII, § 1 of the Nebraska Constitution and the applicable statutes." 238 Neb. at 585, 471 N.W.2d at 747.
"After declaring unconstitutional the redefinition of real property provided under LB 1 (codified at Neb.Rev.Stat. § 77-103 (Reissue 1990)), and reaffirming its finding in Natural Gas Pipeline Co. v. StateBd. of Equal., 237 Neb. 357, 466 N.W.2d 461 (1991) as to the unconstitutionality of the exemption of railroad rolling stock in LB 7 (codified at Neb.Rev.Stat. § 77-202(11) (Reissue 1990)), the court made four observations:
 (1) The ratio of "real" to "personal" pipeline property remains essentially unchanged since our decision in Northern Natural Gas Co. v. State Bd. of Equal., supra; (2) personal property and real property are both "tangible property" under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1; (3) the State Board erred in failing to assess or tax the rolling stock of railroad or carline companies operating in Nebraska in 1990; (4) the appellants are entitled to the same tax treatment as the railroads, carline companies, and other centrally assessed taxpayers pursuant to Neb. Const. art. VIII, § 1, and our decisions in Northern Natural Gas Co., supra, and Natural Gas Pipeline Co. v. State Bd. of Equal., 237 Neb. 357, 466 N.W.2d 461
(1991).
 238 Neb. at 576-77, 471 N.W.2d at 742.
Following its making of there observations, the court continued by discussing the "relief" or "remedy" available to the appellants:
 To what relief are these taxpayers entitled? The appellants contend they should be "equalized" at zero percent for 1990 because the Tax Commissioner did not value, assess, or tax any rolling stock of railroad or carline companies operating in Nebraska in 1990. We conclude that this proposed remedy is inappropriate.
 Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. See, Yellowstone Pipe Line Co. v. State Bd. of Equal., 138 Mont. 603, 358 P.2d 55
(1960), cert. denied 366 U.S. 917, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). As we said in Natural Gas Pipeline Co., supra at 366, 466 N.W.2d at 467, "The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax." Accord, Gordman Properties Co. v. Board of Equal., 225 Neb. 169, 403 N.W.2d 366 (1987); Hacker v. Howe, 72 Neb. 385, 101 N.W. 255
(1904). The process of equalization, therefore, cannot be applied to property that is not taxed. The appellants' remedy in this case, although based on the uniformity and proportionality requirement of Neb. Const. art. VIII, § 1, does not involve equalization. Any language in our opinion in Northern Natural Gas Co., supra, which might be read as implying the contrary is hereby disapproved.
* * *
 We determine that the appellants' remedy in this case is not for their property to be equalized at zero percent of actual value, but for it to be taxed uniformly and proportionately in compliance with Neb. Const. art. VIII, § 1.
238 Neb. at 577, 583, 471 N.W.2d at 742, 746.
Subsequent to this discussion of the "relief" or "remedy" to be provided to appellants, the court held unconstitutional the exemptions for personal property contained in Neb.Rev.Stat. § 77-202(6)-(9) (Reissue 1990), and expressly overruled its decision in Stahmer v. State,192 Neb. 63, 218 N.W.2d 893 (1974), which had upheld as legitimate classifications the exemptions for agricultural income-producing machinery and equipment, agricultural products and business inventories in § 77-202(6)-(9). 238 Neb. at 581-85, 471 N.W.2d at 744-46. Specifically, the court held that the property tax exemptions enumerated in 77-202(6)-(9) were "unconstitutional under Neb. Const. art. VIII, § 1 in that they prevent the levy of taxes "by valuation uniformly and proportionately upon all tangible property and franchises.'"Id at 585, 471 N.W.2d at 747. The court concluded by reversing the order of the State Board, and remanded the cause "with directions to assess the property o the appellants and equalize its value as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes." Id.
 II. Effect of the Court's Declaration that the Exemptions in Neb.Rev.Stat. § 77-202 (6)-(9) and 11 (Reissue 1990) are Unconstitutional.
Your initial series of questions pertain to the effect of the court's declaration that the exemptions provided under Neb.Rev.Stat. § 77-202(6)-(9) (Reissue 1990), consisting principally of business inventories, agricultural income-producing machinery and equipment, and agricultural inventories, are "unconstitutional under Neb. Const. art. VIII, §1 in that they prevent the levy of taxes `by valuation uniformly and proportionately upon all tangible property and franchises.'"238 Neb. at 585, 471 N.W.2d at 747.[1]
Generally, a judicial declaration "that a statute is unconstitutional has the effect of rendering the statute null and void, and the act, in legal contemplation, is as inoperative as though it had never been passed or written and is regarded as invalid, or void,. . . ." 16 C.J.S. Constitutional Law § 107 (1984). The Nebraska Supreme Court has followed this general rule. In Board of Educational Lands and Fundsv. Gillett, 158 Neb. 558, 561, 64 N.W.2d 105, 106 (1954), the court stated that an unconstitutional act is regarded "for all purposes as though it had never been passed." Accord Propst v. Board ofEducational Lands and Funds, 156 Neb. 226, 55 N.W.2d 653 (1952), certdenied 346 U.S. 823; see also Anderson v. Lehmkuhl, 119 Neb. 451, 461,229 N.W. 773, 777 (1930) (An unconstitutional statute "imposes no duties and confers no power or authority on anyone").
Occasionally, however, courts have declined to give retroactive affect to judicial decisions "in the interest of justice." Linkletter v.Walker, 381 U.S. 618, 628 (1965). The United States Supreme Court has outlined three relevant factors to be considered in determining whether a decision should receive prospective application. First, the decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Chevron OilCo. v. Huson, 404 U.S. 97, 107 (1971). (citations omitted) ["Chevron"]. Second, the court must consider the purpose and effect of the rule in question to determine whether retrospective application will further or retard its operation. Id. Finally, where substantial inequities would result if the rule is applied retroactively, a strong basis for prospective application exists in order to avoid injustice or hardship.Id. Accord American Trucking Assns, Inc. v. Smith, ___ U.S. ___,110 S. Ct. 2323, 110 L.Ed.2d 148 (1990). In MAPCO, the court did not address the question of whether its determination that the exemptions in §77-202(6)-(9) were unconstitutional was to be given only prospective effect.[2] In our view, a strong argument exists to support the position that the court's declaration of the unconstitutionality of these exemptions should be viewed as prospective in nature, based on application of the three factor test outlined in Chevron.
As to the first factor, it is apparent that the court's decision inMAPCO overruled clear past precedent in that it expressly overturned the court's earlier opinion in Stahmer v. State, 192 Neb. 63, 218 N.W.2d 893
(1974), wherein the court held constitutional the partial exemption from taxation provided to the types of property enumerated in 77-202(6)-(9).283 Neb. at 583, 471 N.W.2d at 746. Thus, application of the first factor in Chevron militates towards construing the court's declaration of the invalidity of these exemptions a being prospective only, as opposed to construing such as compelling retroactive application of the decision to compel the elimination of these exemptions for tax year 1990.
The second factor, involving consideration of whether retroactive operation will retard or impede the rule in question, appears to favor granting retroactive effect to the court's declaration. To the extent the court's decision to address the constitutionality of the exemptions in77-202(6)-(9), and its statement that such was necessary "to reach any meaningful resolution of the problem presented to us" (238 Neb. at 583,471 N.W.2d at 476), may be construed to evince an intent by the court to have such property placed on the tax rolls to achieve the uniform and proportionate taxation of tangible property mandated by article VIII, § 1, then granting purely prospective effect to the court's declaration off the unconstitutionality of these exemptions would seem inappropriate. Given the lack of clarity as to this arguable intent behind the court's decision, however, we believe it is inappropriate to give great weight to consideration of this factor.
The third Chevron factor, focusing on whether substantial inequities would result if the rule is applied retrospectively, provides a strong basis to support granting prospective application to the court's decision that the exemptions in § 77-202(6)-(9) are unconstitutional. The exemptions struck down in MAPCO had been in existence for many years, and their validity had been recognized by the court in Stahmer v. State. To retroactively apply the court's declaration as to the invalidity of these exemptions for 1990 (the only tax year before the court) would undoubtedly place a substantial hardship on the many individuals and entities which relied on the legality of the exemptions in §77-202(6)-(9) with respect to the conduct of their business affairs prior to the court's decision in MAPCO.
In sum, upon consideration of the question of whether the court's declaration of the unconstitutionality of the exemptions in §77-202(6)-(9) in MAPCO should be applied prospectively, we conclude that, based upon an analysis of the factors enunciated in Chevron, the court's declaration should be given only prospective effect.[3] The court's opinion, while admittedly silent on this question, need not, in our view, be construed as compelling the retroactive taxation of such property as the sole "remedy" or "relief" which the Board is mandated to provide to the complaining taxpayers in order to "assess" and "equalize" their values "as required by article VIII, § 1 of the Nebraska Constitution and the applicable statutes." 238 Neb. at 585, 471 N.W.2d at 747.
Should the Board disagree with this analysis, here then necessary to address your questions as to the authority of the Board to compel "taxing officials" to list, value, and tax previously exempted property, or, alternatively, if it is determined the Board possesses no such authority, to address what authority or responsibility "tax officials" have with respect to the taxation of such property.
As to locally assessed personal property (such as would be involved with respect to any action by the Board to compel the valuation and assessment of property previously exempted under 77-202(6)-(9)), various statutory provisions provide authority to county assessors to list for tax purposes "omitted property." Neb.Rev.Stat. 77-1233.04(2) (Reissue 1990) provides, in part:
 The county assessor shall list any item of personal property omitted from or not returned on a personal property return of any taxpayer and value the property at its actual value. The assessor shall list and value omitted or not returned property for the current taxing period and the three previous taxing periods or any taxing period included therein. Property so listed in value shall be taxed at the same rate as would have been imposed upon the property in the governmental subdivision of the state in which the property should have been returned to for taxation.
Subsection (4) of section 77-1233.04 further provides:
 The county assessor may with the approval of the county board of equalization waive all or part of the penalty assessed and any interest thereon. The entire penalty and interest shall be waived if the omission or failure to return any item of personal property was for the reason that the property was not required to be reported in previous years or the property was timely reported in the wrong taxing district. (Emphasis added).
In addition, Neb.Rev.Stat. § 77-1233.05
(Reissue 1990) provides, in pertinent part:
 If a return is voluntarily filed or omitted property is voluntarily reported after the final date for returning such property has passed for the current taxing period and the three taxing periods or any taxing period included therein, the property shall be taxed at the same rate as imposed upon the property in the governmental subdivision of the State of Nebraska in which the property should have been returned for taxation. . . . If the omission or failure to return or report property was caused by the fact that such property had not been required to be reported in previous years or that such property was timely reported in the wrong taxing district, the entire penalty and the interest on the penalty shall be waived. (Emphasis added).
With respect to locally assessed property, it is questionable whether the Board possesses authority to direct that such property be placed on the tax rolls, as its constitutional and statutory authority is limited to reviewing and equalizing assessments of property in the state. See Neb. Const. art. IV, § 28 (State Board has the "power to review and equalize assessments of property for taxation within the state"); Neb.Rev.Stat. § 77-505 (Reissue 1990) (State Board "shall annually review the abstracts of assessments of real and personal property submitted by the county assessors, examine the valuation of all other property which is valued by the state, and equalize such valuations for tax purposes within the state.").[4]
Irrespective of whether the Board alone possesses any such directory authority, however, we note the Tax Commissioner is provided with broad authority to direct the activities of county assessors under Neb. Const. art. IV, § 28, wherein he or she is granted "jurisdiction over the administration of the revenue laws of the state," as well as under various statutes providing the Tax Commissioner with general and specific authority over county assessors in the administration of the property tax laws of the State of Nebraska, E.g. Neb.Rev.Stat. § 77-360 and 361;77-366 to 371; 77-378; 77-1229; 77-1311; 77-1314; 77-1325(3); 77-1330; and 77-1336 (Reissue 1990). Thus, while it is arguable whether the Board possesses authority to direct county assessors to list and value property under existing statutes, the Tax Commissioner possesses broad authority to direct and supervise the actions of county assessors under existing Nebraska law.
With respect to centrally assessed property (in other words, "property valued by the state"), the value of such property is determined by the Tax Commissioner, subject to review and equalization by the Board. See Neb.Rev.Stat. §§ 77-601 et seq. (Reissue 1990); Neb.Rev.Stat. §§ 77-801 et seq. (Reissue 1990); Neb.Rev.Stat. §§ 77-1244 et seq. (Reissue 1990); Neb.Rev.Stat. § 77-505 (Reissue 1990). One of the "observations" made by the court in MAPCO was that the "State Board erred in failing to assess or tax the rolling stock of railroad or car companies in Nebraska in 1990;. . . ." 238 Neb. at 577, 471 N.W.2d at 472. Given this declaration, MAPCO could be construed to require the Board to assess such unconstitutionally "exempt" property as part of the remedy to be afforded to assure the uniform and proportionate taxation required by Article VIII, section 1.[5]
In sum, in response to your initial questions regarding the effect of the court's declaration in MAPCO of the unconstitutionality of the exemptions in § 77-202(6)-(9) relative to the relief to be afforded the taxpayers, we conclude as follows:
 (1) The court's decision should, based upon an analysis of the factors enunciated in Chevron, be construed as being prospective only, and should not be interpreted as a directive to the Board. (or the Tax Commissioner) to place all "unconstitutionally" exempt personal property on the tax rolls for 1990 as the sole "remedy" or "relief" to be provided by the Board.
 (2) In the event the Board elects to determine that the decision in MAPCO mandates the taxation of property exempted for 1990 (consisting of property exempted under § 77-202
(6)-(9) and (11)) in order to achieve compliance with the mandate that the taxpayers property be "assessed" and "equalized" "as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes" (238 Neb. at 585, 471 N.W.2d at 747), both statutory and state constitutional authority exists to support such action. We caution, however, that any such attempt by the Board (and the Tax Commissioner) will undoubtedly raise due process objections from individuals and entities challenging the taxation of property effective January 1, 1990, as being unduly harsh and oppressive. While the United States Supreme Court has not established strict temporal restrictions for the imposition of retroactive taxation, it is evident that application of a tax to distant transactions or events may well contravene due process requirements. See Welch v. Henry, 305 U.S. 134
(1938); Cf. McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, ___ U.S.___, ___, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17, 38 (1990) (State may satisfy due process requirements by providing remedy for discriminatory taxation by assessing and collecting back taxes from those who benefited frpm the unconstitutional discrimination, subject to due process limitations regarding retroactive taxation). This is so because retroactive taxation upsets otherwise settled legal understandings upon which taxpayers have relied in structuring their dealings, and, particularly, in the area of property taxation, their ownership of property subject to assessment at a specified date and time. who benefited from the subject to due
III. Effect of the Court's Determination in MAPCO That "Equalization" of the Taxpayers Property at "Zero Percent of Value is Not the Appropriate Remedy.
In your second series of questions, you ask us to consider the effect of the court's declaration "that the appellant's remedy in this case is not for their property to be 'equalized' at zero percent of actual value, but for it to be taxed uniformly and proportionately in compliance with Neb. Const. art. VIII, § 1." 238 Neb. at 583,471 N.W.2d at 746. In this regard, you ask "to what relief are the taxpayers entitled" if the Board elects not to act to compel the assessment and taxation of property the exemption of which was declared unconstitutional by the court in MAPCO. Specifically, you ask whether the taxpayers are entitled to "relief from the assessment of their property," or whether the taxpayers are entitled to "[n]o relief from the State Board." You also ask if the requests of the taxpayers have been rendered "moot" by virtue of the court's decision.
Initially, we note that, to the extent you ask whether the opinion in MAPCO may be construed as requiring that "no relief" be afforded the taxpayers, or that the opinion renders "moot" their claims, we believe that the decision cannot be reasonably. interpreted to countenance either result. As the court stated that the cause was "remanded with directions to assess the property of the [taxpayers] and equalize its value as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes" (238 Neb. at 585, 471 N.W.2d at 747), it seems uncontrovertible that the court contemplated that the Board provide some
measure of relief or remedy to the taxpayers. Indeed, if the court would have determined the matter "moot" for lack of an existing controversy, it would have dismissed the case on jurisdictional grounds. See Gas'N Shop v. State, 234 Neb. 309, 451 N.W.2d 81 (1990); Vrana Paving Co. v. City ofOmaha, 220 Neb. 269, 369 N.W.2d 613 (1985).
The question which remains, of course (assuming the Board and the Tax Commissioner do not determine to act to assess the property "unconstitutionally exempted" for 1990, as outlined in section II.of this opinion), is precisely what relief the taxpayers are entitled to receive from the Board under the MAPCO decision.
Subsequent to your request, we have had an opportunity (albeit a limited one) to review the filings, requested by the Board, of various taxpayers relative to the appropriate "relief" or "remedy" to be provided by the Board. In addition, we have reviewed comments filed with the Board on behalf of various political subdivisions which will clearly be affected by any action the Board will take on remand regarding the remedy mandated by the court in MAPCO and its companion cases.
Even a cursory review of the interpretations expressed in these filings demonstrates that basic and fundamental disagreements exist among attorneys familiar with the remedial issues raised as a result of the court's decision in MAPCO. The only clear area of agreement is that, consistent with the court's mandate, the Board must act to correct any "disproportionality" in the taxation of the taxpayers property, and must "assess the property of [the taxpayers] and equalize its value" in accordance with Neb. Const. art. VIII, § 1. 238 Neb. at 585,471 N.W.2d at 747.
The various remedial options outlined in the filings with the Board (other than the possible option of placing previously exempted property on the tax rolls for 1990, discussed previously), may be summarized as follows:
1. Reduction of the taxpayers unit values to zero;
2. Reduction of the taxpayers values by the percentage by which, in the aggregate, railroad property was reduced for 1990 by the unconstitutional exemption of rolling stock;
3. Reduction of the taxpayers values by disregarding that portion of their unit values attributable to personal property; or
4. Reduction of the taxpayers values by a percentage calculated by comparison of the total value of the property tax base in the state with the total value of unconstitutionally exempt property.
We will discuss, in turn, each of these proposed remedial "options."
The first option, advanced only by the taxpayers in MAPCO, advocates the remedy required by the court's decision is for the Board to reduce the entire unit value of the taxpayers to zero for tax year 1990. In support of this position, these appellants point to the "observation" made by the court that "the appellants are entitled to the same tax treatment as the railroads and car companies, and other centrally assessed taxpayers pursuant to Neb. Const. art. VIII, § 1,. . . ."238 Neb. at 577, 471 N.W. 21 at 742. Pointing to the Board's failure to assess railroad rolling stock for 1990, as well as the court's declaration of the unconstitutionality of the exemptions in §77-202(6)-(9), these appellants contend that, "absent the taxation Of unlawfully exempted property, the uniformity requirement of the Nebraska Constitution and equal protection of the law requires the reduction of the valuation of these companies' property to the level of the most preferred classes of property in the state," i.e., to zero value.
While this position may be supportable based on the court's reiteration in MAPCO that "personal property and real property are both `tangible property' under Nebraska law and must be equalized and taxed uniformly pursuant to Neb. Const. art. VIII, § 1" (238 Neb. at 576,471 N.W.2d 742), a result which reduces the taxpayers values to zero and eliminates assessment of their property is seemingly at odds with the court's declaration that the remedy to be provided the taxpayers "is not for their property to be `equalized' at zero percent of actual value, but for it to be taxed uniformly and proportionately in compliance with Neb. Const. art. VIII, § 1." 238 Neb. at 583, 471 N.W.2d at 746. Obviously, placing a value of zero on the taxpayers property would produce the same result as "equalization" at zero percent in that, under either scenario, the taxpayers' property would not be taxed. If the court intended to countenance such relief, it is unlikely that it would have chastised the appellants in MAPCO for "their apparent zeal to avoid taxation entirely."238 Neb. at 583, 471 N.W.2d at 746. While it is not clear what the court intended, it appears that the court's directive to the Board "to assess the property of appellants and equalize its value as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes" (238 Neb at 585, 471 N.W.2d at 747) is not a mandate that these taxpayers escape taxation entirely as a result of the Board's action on remand.[6]
The second proposal, providing a reduction of the taxpayers values based on the percentage by which, in the aggregate, railroad property valuations were reduced as a result of the unconstitutional exemption of railroad rolling stock, is also questionable. First, percentages of railroad rolling stock attributable to the unit values of railroads operating in Nebraska differ for each railroad. Second, car company property, which consists exclusively of rolling stock, is not assessed on a unit value basis, and was not valued or assessed for 1990. Further, we point out that, in Northern Natural Gas Co. v. State Bd. of Equal.,232 Neb. 823, 443 N.W.2d 249 (1989) certdenied ___ U.S. ___, 110 S.Ct. 1130, 107 L.Ed.2d. 1036 (1990) ["Northern"], the propriety of the use by the Board of a "blended" or "aggregate" equalization ratio (based on the aggregate level of assessment of all taxable tangible property), was briefed and argued to the court. While the court in Northern did not discuss the arguments advanced regarding the validity of the "aggregate level of assessment" remedy presented in the context of equalization, it did not accept this approach.232 Neb. 822-23, 443 N.W.2d at 259-60.
The third remedial approach, advocated by all centrally assessed taxpayers before the Board other than the appellants in MAPCO, construes the court's decision in MAPCO and its companion cases as mandating that their unit values be reduced by disregarding that portion of their values attributable to personal property. This would, of course, effectively grant the same relief to such taxpayers as provided by the Board on remand in Northern for tax year 1988, and the relief granted for tax year 1989 as a result of the decisions in Natural Gas Pipeline Co. v. StateBd. of Equal., 237 Neb. 357, 466 N.W.2d 461 (1991) ["Natural"] and several companion cases. Further, by focusing solely on personal property, it is difficult to square this result with the court's observation that "personal property and real property are both within the class of 'tangible property' under Nebraska law and must be equalized and taxed uniformly. . . ." 238 Neb. at 576, 471 N.W.2d at 742. The precise meaning of the court's observation in this regard is somewhat unclear, in that the court discussed at length in MAPCO the unconstitutionality of the redefinition of real property established by LB 1. Id. at 570-76 471N.W.2d at 738-742.
Based on the court's statement that personal and real property are within the same class of "tangible property" subject to the uniformity clause of article VIII, § 1, it seems that the court would have found it unnecessary to address the constitutionality of LB 1, as the definition of property as "real" or "personal" would apparently then not matter for purposes of applying the uniformity requirement. The fact that the court addressed the constitutionality of LB 1 in MAPCO under the circumstances further complicates the task of interpreting whether the court's opinion was intended to draw a distinction between the real or personal property component of the taxpayers unit values in providing a remedy on remand consistent with its mandate. While the relief identified in the third option noted above is consistent with the action taken by the Board in light of Northern and Natural it is simply not clear that such action was intended by the court under its direction to the Board to "assess" and "equalize" the taxpayers property in conformity with article VIII, § 1.
The final option, discussed principally in the Memorandum of Law submitted on behalf of various political subdivisions, proposes a remedy consisting of a reduction of the taxpayers values by a percentage calculated by comparison of the total value of taxed tangible property with the total value of property declared to be unconstitutionally exempted by the court in MAPCO. The difficulty with this approach, however, is that, as noted previously, the court did not accept the use of an "aggregate level of assessment" approach to "equalization" when this issue was presented in Northern. While it is true that the aggregate level of assessment theory presented in Northern was based solely upon consideration of the level of assessment of all taxable tangible property (as opposed to considering the effect of exempt property or property not subject to taxation), nothing in the decision in MAPCO plainly suggests that a remedy of this nature will satisfy the court's directive that the taxpayers property be assessed and equalized as required by article VIII, § 1. While this remedial option may well be attractive in theory, it appears inconsistent with many decisions previously rendered by our state supreme court.
In sum, in response to your second series of questions regarding the effect of the court's determination that "equalization" of the taxpayers property at "zero" percent of its value is not the appropriate remedy, we conclude as follows:
 1. The court's decision in MAPCO cannot be construed as requiring that "no relief" be afforded the taxpayers by the Board, and cannot be interpreted to render the taxpayers claims "moot." The decisions in MAPCO and its companion cases clearly require the Board to take some action to "assess." and "equalize" the property of the taxpayers in conformance with article VIII, § 1.
 2. As to the precise nature of the relief to be provided by the Board in order to satisfy the court's mandate and its constitutional duty to assess and equalize the taxpayers property in compliance with article VIII, § 1, we simply cannot, for the reasons outlined above, state specifically what action we believe the Board must take to satisfy the court's directions on remand. We have attempted to provide some guidance to you with respect to the propriety of the variety of remedial options which have been presented in the filings presented from both the taxpayers and various political subdivisions which were requested by the Board. Given the possibility of future litigation challenging whatever action the Board may take on remand, we believe it would be improvident for us to express an opinion as to any specific action the Board must take in conformance with the decisions in MAPCO and its companion cases. This is particularly true in light of the divergence of views which have been expressed relative to the Board's obligation to comply with the court's directive on remand, and our obligation to defend whatever action the Board will ultimately take in the event the Board's decision is challenged. In any event, it is simply impossible for us to conclude that any single answer exists which will assuredly satisfy the Board's compliance with the court's decisions in these cases.[7] The ultimate decision to be made in this regard rests with the Board.
IV. Conclusion
In conclusion, it is our opinion that the Court's decision in MAPCO
does not require the Board (or the Tax Commissioner) to place all "unconstitutionally" exempt personal property on the tax rolls for 1990. The reasons for our opinion on this issue are (1) the fact that the Court did not specifically order that this be done and (2) the Chevron case. Under Chevron, the fact that the Nebraska Supreme Court overruledStahmer v. State, in which the Court had previously upheld the constitutionality of similar exemptions, and the fact that to retroactively apply the Court's declaration for 1990 would work a substantial hardship on many individuals and entities which relied upon the legality of the exemptions in § 77-202(6)-(9) with respect to the conduct of their affairs prior to the Court's decision in MAPCO, argue strongly against retroactive application.
However, in the event that the Board determines that the "unconstitutionally" exempt personal property should be placed on the tax rolls for 1990, it appears that the Tax Commissioner has the authority to do so subject, however, to the possible challenge that the retroactive imposition of such tax might violate the due process requirements of the United States Constitution.
Concerning what is the appropriate "remedy" for the Board to adopt in this case, it is our opinion that the answer to that question is very unclear. An examination of the materials presented to the Board demonstrates basic and fundamental disagreements between learned tax attorneys concerning this issue.
We have therefore reviewed the various "remedies" proposed by interested persons in this matter and have analyzed each based upon what the Nebraska Supreme Court said in the MAPCO case. We hope that this analysis will be helpful to the Board as it considers this matter. The ultimate decision must be made by the Board of Equalization, subject to judicial review, and we will do our best to defend any legally defendable action the Board takes concerning this matter.
Very truly yours,
 DON STENBERG Attorney General
L. Jay Bartel Assistant Attorney General APPROVED BY:
______________________________ Don Stenberg, Attorney General
7-199-7.7
[1] The court had previously held unconstitutional the exemption for railroad rolling stock contained in 77-202(11). Natural Gas Pipeline Co.v. State Bd. of Equal., 237 Neb. 357, 466 N.W.2d 461 (1991) ["Natural"].
[2] This is not surprising, as the question of the constitutionality of such exemptions was addressed by the court without the issue having been raised h the parties. 238 Neb. at 583-84, 471 N.W.2d at 746.
[3] We note that, based on the Legislature's enactment of LB 829, exempting all personal property (other than motor vehicles) for tax year 1991, different legal considerations apply with respect to the constitutionality of the Legislature's action granting such an exemption which are not encompassed by the decision in MAPCO. The constitutionally of various provisions of LB 829 are, of course, the subject of pending (or potential) litigation.
[4] Neb.Rev.Stat. 77-1311(2) (Reissue 1990) does require county assessors to "[o]bey all rules and regulations made under Chapter 77 and the instructions sent out by the State Board of Equalization and Assessment or the Tax Commissioner; . . . ."
[5] This presents an additional concern, however, in that the Board has already acted to recertify at zero value air flight equipment taxed pursuant to Neb.Rev.Stat. 77-1244 et seq. for tax year 1990. The Board's action in this regard was taken subsequent to the decision in Natural, but prior to the decision inMAPCO.
[6] We point out that only the appellants in MAPCO have requested the Board to reduce their entire unit values to zero for tax year 1990. The other centrally assessed taxpayers have requested the Board to reduce the portion of their unit values attributable to personal property to zero value on remand.
[7] Indeed, it is precisely the absence of such clarity which compelled us to honor the Governor's request to seek rehearing from the court to clarify the precise nature of the relief or remedy to be afforded the taxpayers in these cases.