COUNTY OF HALL, STATE OF NEBRASKA, EX REL. DEBRA A. TEJRAL, APPELLEE, V. BRUCE ANTONSON, APPELLANT.
437 N.W.2d 813

Filed April 7, 1989.   No. 87-775.

James D. Livingston, of Cunningham, Blackburn, Livingston, Francis, Cote, Brock & Cunningham, for appellant.

Ellen L. Totzke, Deputy Hall County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and ENDACOTT, D.J.

SHANAHAN, J.

In a petition verified by Debra A. Tejral and on the relation of Debra A. Tejral, the County of Hall, State of Nebraska, commenced a filiation proceeding on March 19, 1986, under Neb. Rev. Stat. § 43-1406 (Reissue 1988), in the district court for Hall County on the allegations that Debra Tejral, unmarried, is the mother of Andrew L. Tejral, whose father, Bruce Antonson, has denied paternity.

As the result of Debra Tejral's motion for genetic testing, the district court, authorized by Neb. Rev. Stat. § 43-1414 (Reissue 1988) and over Antonson's objection that § 43-1414 is unconstitutional, ordered Antonson to furnish a blood sample

for genetic testing. At trial and over Antonson's objection on constitutional grounds, the court received in evidence the verified written laboratory report containing the results of the genetic testing ordered by the court and determined that Antonson was the father of Andrew Tejral.

## STATUTORY AUTHORITY FOR GENETIC TESTING

Concerning genetic testing, Nebraska statutes provide:

In any proceeding to establish paternity, the court may, on its own motion, or shall, on a timely request of a party, after notice and hearing, require the child, mother, and alleged father to submit to genetic testing to be performed on blood or any other appropriate tissue. If genetic testing is required, the court shall direct that inherited characteristics, including, but not limited to, blood types, be determined by appropriate testing procedures and shall appoint an expert in genetic testing and qualified as an examiner of genetic markers to analyze and interpret the results and to report to the court. The court shall determine the number of experts required.

For purposes of sections 43-1414 to 43-1418, an expert in genetic testing shall mean a person who has formal doctoral training or postdoctoral training in human genetics.

§ 43-1414.

The results of the tests, including the statistical probability of paternity, shall be admissible evidence and shall be weighed along with other evidence of paternity. Such evidence may be introduced by verified written report unless there is a timely request for personal testimony of the expert at least thirty days prior to trial.

Neb. Rev. Stat. § 43-1415 (Reissue 1988).

## DETERMINATION OF PATERNITY

After the paternity petition had been filed and Antonson in his answer had denied that he was the father of the child in question, the county attorney filed a motion, requesting "the Court to set down a hearing regarding the Respondent [Antonson] making himself available for blood testing to aid in the determination of the paternity of Andrew L. Tejral," and notified Antonson's lawyer concerning the scheduled hearing

on the motion. The court conducted a hearing, attended by lawyers for the parties, at which the court ordered that blood tests be obtained for genetic testing to be performed by Roche Biomedical Laboratories, Inc., the expert in genetic testing designated by the court. See § 43-1414.

At trial, Debra Tejral testified that, during the time from October 1984 through the end of January 1985, she had periodic sexual relations with only Antonson and that her son, Andrew, was born on August 28, 1985. Notwithstanding Antonson's objection on constitutional grounds, but without any objection based on the Nebraska Evidence Rules, the verified report of Roche Biomedical Laboratories was received in evidence and contained:

CONCLUSIONS:

The alleged father, BRUCE ANTONSON, cannot be excluded as the biological father of the child, ANDREW L. TEJRAL, since they share common genetic markers. Using the HLA system, along with ABO, Rh, MNSs, Kell, and Duffy, the probability of paternity is 99.97%, as compared to an untested man of the North American Caucasian population. Therefore, the alleged father is practically proven to be the biological father of the child.

The court entered judgment that Antonson is the father of Andrew Tejral.

### ASSIGNMENT OF ERROR

Antonson, basing his appeal on "one specific issue," contends that § 43-1414 is unconstitutional because the statute procedurally offends due process accorded by the Nebraska and U.S. Constitutions. See, Neb. Const. art. I, § 3; U.S. Const. amends. V and XIV. Antonson suggests that a deficiency of due process in § 43-1414 results from the statutory language "the court . . . shall, on a timely request of a party, after notice and a hearing, require the child, mother, and alleged father to submit to genetic testing," and argues:

There is nothing in the statute [§ 43-1414] that allows or requires the trial court any discretion as to the ordering of the test, nor is there any requirement that there be any showing of either reasonable or probable cause as to why the natural mother has filed the motion or allowed the trial

court to receive any evidence to consider the motion and subsequent ordering of the genetic testing of the alleged father's tissue.

Brief for appellant at 12. Neb. Rev. Stat. § 49-802 (Reissue 1988) provides: "Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter shall be as follows: (1) . . . When the word shall appears, mandatory or ministerial action is presumed." As we understand the gist of Antonson's argument, *shall* in § 43-1414 renders genetic testing mandatory in a filiation proceeding under § 43-1406 and transforms a "hearing" into a perfunctory procedure which is meaningless inasmuch as genetic testing is inevitable and a foregone conclusion without an actual hearing on the propriety of the testing authorized by § 43-1414.

## DISCOVERY FOR GENETIC TESTING

Section 43-1414 is essentially a discovery statute with a function and procedure quite similar to Neb. Ct. R. of Disc. 35 (rev. 1986), a discovery rule concerning examination of a party, which states:

(a) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Rule 35 is one of the "Nebraska Discovery Rules For All Civil Cases Promulgated By The Nebraska Supreme Court," which rules became effective on January 1, 1983.

In *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985), a dissolution proceeding or divorce action involving disputed paternity, we held that a blood grouping test or other scientific tests for determining paternity were within the

purview of discovery authorized by Rule 35 of the Nebraska Discovery Rules.

Although the pleadings alone may demonstrate a physical or mental condition "in controversy," that is, a condition directly involved in the litigation as a material element of the cause of action or defense, and establish "good cause," generally, the requirements of "in controversy" and "good cause" contained in Rule 35 are not satisfied by mere conclusory allegations of pleadings, but are fulfilled by a movant's affirmative showing that the condition to be verified by the requested examination, physical or mental, is actually controverted and that good cause exists for ordering the examination. See, *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964); *Neuman v. Neuman*, 377 A.2d 393 (D.C. 1977). A movant's inability to obtain the desired information without the requested examination is relevant to a court's decision whether to order an examination under Rule 35. See *Schlagenhauf v. Holder, supra*. See, also, *Martin v. Tindell*, 98 So. 2d 473 (Fla. 1957).

To obtain discovery under Rule 35, the requisite showing does not require the movant to prove the movant's case on the merits at an evidentiary hearing, but may include a showing by an appropriate affidavit or other suitable information presented to a court whereby the court can perform its function under Rule 35. See, *Schlagenhauf v. Holder, supra*; *Anderson v. Anderson*, 470 So. 2d 52 (Fla. App. 1985).

This brings us to Antonson's claim concerning the deficiency of procedural due process in § 43-1414. More appropriately, this brings us to the point that we need not consider Antonson's contention about unconstitutionality of § 43-1414. The Supreme Court declines to pass on the constitutionality of legislation unless such determination concerning constitutionality of a statute is necessary for proper disposition of a question raised in an appeal. *Sommerfeld v. City of Seward*, 221 Neb. 76, 375 N.W.2d 129 (1985). Antonson does not contest the reliability or scientific accuracy of the genetic testing ordered by the district court and reflected in the report received in evidence at Antonson's trial. While § 43-1415 relates to admissibility of a report on genetic testing if the report is used

as an exhibit in the face of an objection to admissibility under the Nebraska Evidence Rules, Antonson objected to evidential introduction of the report as a product of a statute alleged to be deficient in procedural due process and did not object to the admissibility of the report under the Nebraska Evidence Rules. Were we to consider Antonson's constitutional claim concerning § 43-1414, and, even if the statute were deficient regarding procedural due process as claimed by Antonson, the blood tests, ordered by the district court in conjunction with genetic testing, were used in a proceeding involving disputed paternity of a child. Thus, the blood tests were a proper matter for discovery under Rule 35. *Younkin v. Younkin, supra.* In the case before us, the petition to determine paternity, a pleading verified by the oath of Debra Tejral, presented sufficient "good cause" concerning disputed paternity, a matter "in controversy," which might well be resolved, or at least made more or less probable, by the results from a reliable and accurate scientific test. Thus, the pleadings demonstrated a physical condition "in controversy" and "good cause" for the requested blood samples used in genetic testing.

For the reason that the district court's order regarding genetic testing was obtained in conformity with Rule 35, we need not, and do not, consider Antonson's assault on the constitutionality of § 43-1414, a constitutional tempest in a statutory teapot.

Inasmuch as Antonson does not question the sufficiency of the evidence for the district court's adjudication of the paternity issue, we affirm the judgment of the district court.

AFFIRMED.