IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF JAYDEN G. V. JUSTIN B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF JAYDEN G., A MINOR CHILD, APPELLEE,

v.

JUSTIN B., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT,
AND TARA G., THIRD-PARTY DEFENDANT, APPELLEE.

Filed November 22, 2016.    No. A-16-334.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Vanessa J. Gordon and Ryan David Patrick, of Gordon Law, L.L.C., for appellee Tara G.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

INBODY, Judge.

## I. INTRODUCTION

Justin B. appeals from an order of the district court for Lancaster County denying his complaint for modification seeking sole legal and physical custody of the parties' daughter, Jayden G., and child support from Tara G. Justin also appeals the district court's decision to: not award him attorney fees; deny his pretrial motions to continue trial, for appointment of a Rule 706 expert, for a Rule 35 examination of Jayden, and for appointment of a guardian ad litem for Jayden; and deny his motion to alter or amend and motion for new trial.

## II. STATEMENT OF FACTS

Justin and Tara, although never married, are the parents of Jayden, born September 2009. On June 15, 2011, the Lancaster County District Court awarded Tara legal and physical custody of Jayden. On July 22, 2015, Justin filed a complaint for modification seeking legal and physical

- 1 -

custody of Jayden, claiming a material and substantial change in circumstances justified the modification. Justin claimed Tara failed to ensure Jayden's consistent school attendance; maintained a filthy, cluttered, and unsuitable residence; operated a retail "vape shop" out of her residence using "E-juice chemicals" and allowing various individuals into her residence; failed to provide proper nutrition for Jayden; failed to pay a $900 judgment regarding child care; had unstable personal relationships; allowed others to care for Jayden before offering Justin an opportunity to care for her; failed to list Justin on records relating to Jayden; and was terminated from previous employers.

The case was set for trial. Prior to trial, Justin filed a motion to continue trial and motions for an appointment of an expert to make a recommendation regarding Jayden's best interests under Neb. Rev. Stat. § 27-706 (Reissue 2008); an examination of Jayden's mental and physical condition under Neb. Ct. R. Disc. § 6-335; and an appointment of a guardian ad litem on behalf of Jayden pursuant to Neb. Rev. Stat. § 42-358 (Reissue 2008). The district court denied the motions.

The Lancaster County District Court held a trial on December 21, 2015. The trial court heard testimony regarding Tara's residence and Justin's parenting time. Tara testified that she resides in a 2-bedroom home in Tecumseh with Jayden, but previously resided in an apartment in Lincoln with her ex-husband, Eric F. Tara testified she moved to Tecumseh to have family support, to be closer to Justin's mother, Tammy B.; father, Steve B.; and ex-stepmother, Roseanne B.; while she finished her RN courses, and because of the schools for Jayden. Justin testified he resides in Lincoln, has lived at the same residence for 8 years, has been employed with the same company for 7 years, and illustrated his parenting time when both parties resided in Lincoln, including his involvement in dropping off and picking up Jayden at school. Tara stated that prior to the move from Lincoln to Tecumseh, Justin exercised most of his parenting time with Jayden at Tammy's home in Tecumseh. Tammy stated Justin would come down to her home once in a while before Tara moved to Tecumseh and that now Justin would stay and exercise his parenting time at her home. Justin also claimed he did not know Tara moved to Tecumseh until Jayden told him, and that the move has diminished his parenting time with Jayden. Tara testified that when she moved to Tecumseh, she volunteered to "drive [Jayden] up" and would be willing to address the geographical distance Justin had to travel to exercise his parenting time.

The court also heard testimony regarding Tara's home. Justin testified that he has observed Tara's residence with "stuff all over the floor," that he "could barely walk," and that "it was kind of unclean." Tara provided the trial court with pictures of her residence. Steve testified Tara's residence is "usually fairly picked up."

The trial court also heard testimony regarding Tara and Jayden's relationship with Eric. Tara testified she had been married, and divorced, to Eric twice. Justin, Tammy, and Steve testified Jayden will call Eric, "dad," "daddy," or "Daddy Eric." Tara testified she did not encourage Jayden to refer to Eric as "father," "daddy," or "dad."

Moreover, the court heard testimony regarding Jayden's education and school attendance. Tara testified Jayden was absent from school for 7½ days throughout the entire school year. Tara also testified she has not received any communication from the school that Jayden is in any form of referral program for educational neglect or truancy, or that Jayden's teachers have expressed any concern about her behavior. Tara indicated Jayden excels in school work, is at the top of her

class, is extremely intelligent, and takes advanced courses. Justin testified Jayden does very well in school and that she is very smart.

The court also heard testimony regarding Tara's employment. Tara testified she operates an establishment selling electronic cigarette supplies. Tara also testified the only customers that would come to her home to purchase supplies were her friends, but someone might tag along with the friend. Tara also testified she was previously employed by Correct Care Solution and Belle Terrace as an LPN, but was terminated.

Further, the trial court heard testimony regarding Tara listing Justin as a contact for Jayden, Justin's ability to use his phone at work, and the type of arrangements Tara would make for others to care for Jayden. Tara testified she previously listed Eric as Jayden's parent for an after school program form, even though he was just a step-parent. Tara admitted Justin was not listed on the document, but stated she did not list Justin because she believed he was not going to be able to answer his phone at work. Tara testified Justin cannot take his phone into his work building and that there are times she texts him to assist with pick-up, drop-off, or watching Jayden, and that several hours go by without a response. Tammy also testified Justin cannot carry his phone at work. Tara stated that by the time Justin responds, she generally has already made other arrangements for Jayden's care. Tara also stated Justin was listed as being able to pick up Jayden from the after school program. Tara additionally testified Roseanne would care for Jayden regularly.

The court also heard testimony regarding Jayden's health and hygiene. Justin claimed Jayden is getting "a little bit heavier" and her clothes are getting tight. Further, Justin claimed Jayden's hygiene was poor and "she's reeked pretty good a few times, like a teenage boy." Tammy also indicated Jayden was chubbier and her clothes were a "getting a little bit too tight on her." Tammy also claimed Jayden "had some really stinky body odor" and expressed other concerns about her appearance. However, Roseanne indicated she has never had any concern for Jayden's hygiene, cleanliness, or eating habits. Steve also stated he did not have any concern about Jayden's cleanliness or hygiene.

The court also heard testimony from Justin and Tammy regarding Jayden's concerning behavior. Justin claimed Jayden has been acting aggressively towards him, that she will not listen to him, and that she will randomly hit him. However, Justin stated he never notified Tara of his concerns regarding Jayden's behavior.

The trial court determined Justin failed to present sufficient evidence to show a material change of circumstances existed to support a modification of custody and parenting time, and declined to change custody, parenting time, and child support, or award attorney fees.

### III. ASSIGNMENTS OF ERROR

On appeal, Justin's assignments of error, consolidated and restated, are that the trial court abused its discretion in: (1) not awarding custody of Jayden to Justin and not adopting Justin's parenting plan; (2) not modifying child support; (3) not awarding Justin attorney fees; (4) denying Justin's pretrial motions to continue trial, appointment of a Rule 706 expert, for a Rule 35 examination of Jayden, and for an appointment of a guardian ad litem for Jayden; and (5) denying Justin's motion to alter or amend the judgment and for a new trial.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.,* 292 Neb. 68, 871 N.W.2d 230 (2015). See also, *Schrag v. Spear,* 290 Neb. 98, 858 N.W.2d 865 (2015). The same standard applies to the modification of child support. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

The district court's decision on a request for attorney fees is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008). This standard of review applies regardless of whether the court awarded or denied attorney fees. See *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

The granting or denying of a motion to compel a physical or mental examination of a party is grounded in the discretion of the trial court; absent an abuse of that discretion, the trial court's ruling must stand. *Thynne v. City of Omaha*, 217 Neb. 654, 351 N.W.2d 54 (1984); see also, *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

The appointment of a guardian ad litem for a child is a matter within the discretion of the trial court. *Robinson v. Robinson*, 236 Neb. 879, 464 N.W.2d 193 (1991).

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. *Freeman v. Groskopf,* 286 Neb. 713, 838 N.W.2d 300 (2013). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## V. ANALYSIS

### 1. CUSTODY MODIFICATION

Justin argues the trial court abused its discretion when it denied his request for physical and legal custody of Jayden because there was a material change in circumstances to show that Tara was unfit to retain custody. Justin argued the evidence at trial indicated that Tara: had unstable employment and personal relationships; operated a questionable and unsafe home business; unjustifiably moved with Jayden to Tecumseh; maintained an unclean residence; caused it so

Jayden had a large number of unexcused absences from school; failed to comply with court orders regarding listing both parents' names on Jayden's enrollment records; and allowed Jayden to have poor hygiene, gain weight, wear ill-fitting clothes, and act with bad behavior.

A child custody modification case requires the party seeking modification must: (1) show that a material change in circumstances has occurred after the entry of the previous custody order and affecting the best interests of the child; and (2) prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id*.

The child's best interests requires a parenting arrangement and plan providing for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2014). Moreover, § 43-2923 sets forth a non-exhaustive factor list to consider in determining the child's best interests in regard to custody. Such factors include: the child's relationship with each parent; the child's desires; the child's general health and well-being; and credible evidence of abuse inflicted on the child by any family or household member. In addition to the "best interests" factors provided in § 43-2923, a court making a child custody determination may consider: the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between the child and parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear, supra*.

The trial court determined Justin did not present sufficient evidence to show a material change of circumstances existed to support a modification of custody and parenting time. Based on our de novo review, we find no abuse of discretion in the trial court's determination that there was not a material change in circumstances that justified granting Justin legal and physical custody of Jayden.

The trial court was presented with conflicting testimony regarding whether a custody change would be in Jayden's best interests. The trial court heard conflicting testimony regarding the care, cleanliness, hygiene, and health of Jayden, and the cleanliness and upkeep of Tara's home. Further, the court heard testimony that Justin is able to exercise his parental time with Jayden and he currently chooses to exercise that time at his mother's residence in Tecumseh. Tara indicated she was open to arranging a more suitable geographic location to assist with Justin exercising his parenting time. Moreover, the court heard testimony that Justin is unable to use his phone during the workday and that Tara is able to make other arrangements to care for Jayden if she is unable. Tara also indicated she has family to support her in Tecumseh, including Justin's mother, father, and ex-stepmother, who all still play an active role in Jayden's life.

The court heard testimony that despite Jayden having a number of school absences, Tara has not received any communication from Jayden's teachers or the school expressing concern

about her behavior, or that Jayden is in a referral program for educational neglect or truancy. The testimony provided that Jayden is very smart, does very well in school, and is at the top of her class.

As the trial court was able to hear and observe the witnesses and accepted one version of the facts rather than another, upon our de novo review, we conclude the trial court did not abuse its discretion when it denied Justin's request for physical and legal custody of Jayden because there was no material change in circumstances.

## 2. CHILD SUPPORT MODIFICATION

On appeal, Justin appeals the trial court's order concerning child support modification. Essentially, Justin argues the trial court erred in ordering him to pay child support because the court erred in denying him sole legal and physical custody of Jayden. Given our resolution of Justin's first assignment of error regarding Jayden's custody, we find that the trial court did not err in denying Justin's request for child support.

## 3. DENIAL OF ATTORNEY FEES

Justin also claims the trial court abused its discretion in not awarding him attorney fees. Similar to the assignment of error regarding child support, Justin argues the trial court erred not awarding him attorney fees because the court erred in denying him sole legal and physical custody of Jayden. Based on our conclusion regarding Justin's assignment of error concerning Jayden's custody, we find that the trial court did not err in not awarding Justin attorney fees.

## 4. PRETRIAL MOTIONS

### (a) Motion for Appointment of Rule 706 Expert

Justin argues the trial court abused its discretion in denying his motion for an appointment of a Rule 706 expert to make findings and recommendations regarding Jayden's best interests.

It is within the trial court's discretion whether to appoint an expert witness. Neb. Rev. Stat. § 27-706(1). Section 27-706(1) states that "[t]he judge *may* on his own motion or on the motion of any party enter an order to show why expert witnesses should not be appointed. . . ." (Emphasis added.)

There is no indication as to why the trial court needed the assistance of a Rule 706 expert to make findings and recommendations regarding Jayden's best interests. The trial court has the ultimate ability to determine a child's best interests, as it is able to hear testimony, to receive exhibits, and to thoughtfully weigh and consider the evidence before it regarding the best interests of a child. As discussed above, the trial court is given a large quantity of factors to review in its consideration for a child's best interests. As such, the trial court did not abuse its discretion in denying this request.

### (b) Motion for Rule 35 Examination

Justin also argues the trial court abused its discretion in denying his motion for a Rule 35 examination of Jayden.

Neb. Ct. R. Disc. § 6-335, also known as Rule 35, states:

> When the mental or physical condition . . . of a party, or of a person in the custody or under the legal control of a party, *is in controversy*, the court in which the action is pending may order the party to submit to a physical or mental examination by one or more physicians, or other persons licensed or certified under the laws to engage in a health profession, or to produce for examination the person in his or her custody or legal control. The order may be made only on motion *for good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

(Emphasis added.)

The Nebraska Supreme Court has determined that the "in controversy" and "good cause" requirements must be fulfilled by a movant's affirmative showing that the physical or mental condition to be verified by the requested examination is actually controverted and that good cause exists for the examination's order. *Cty. of Hall ex rel. Tejral v. Antonson*, 231 Neb. 764, 437 N.W.2d 813 (1989). Mere conclusory allegations of pleadings do not provide a satisfactory threshold to order the examination. *Id.*

In this instance, there is no indication that Jayden's mental or physical health is in controversy. There was no testimony regarding Jayden's mental or physical health beyond concerns that she might be overweight, smell on occasion, or throw tantrums or have occasional behavior problems. Such concerns are not "in controversy," as it not unusual for a child at Jayden's age to exhibit such occasional issues. There was no good cause for ordering such examinations and, therefore, the trial court did not abuse its discretion in denying this request.

(c) Motion for Appointment of Guardian Ad Litem

Justin argues the trial court abused its discretion in denying his motion for an appointment of a guardian ad litem for Jayden.

Neb. Rev. Stat. § 42-358 authorizes a court to appoint an attorney or guardian ad litem to protect the child's interests of and allows the attorney or guardian ad litem to recover his or her fees. *Mitchell v. French*, 267 Neb. 656, 676 N.W.2d 361 (2004); see also, *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). The appointment of a guardian ad litem for a child is a matter within the discretion of the trial court. *Robinson v. Robinson*, 236 Neb. 879, 464 N.W.2d 193 (1991). Such an appointment may be done at the request of a party or upon the court's own motion. See *Ford v. Ford*, 191 Neb. 548, 216 N.W.2d 176 (1974).

Once again, there was no testimony presented indicating the necessity for an appointment of a guardian ad litem. Although it is paramount that the child's interests be protected, in this instance, there is no indication that Jayden's interests or safety were in jeopardy and the trial court appropriately denied the motion. Therefore, we determine the trial court did not abuse its discretion in denying the motion for an appointment of a guardian ad litem.

## VI. CONCLUSION

On appeal, we find the trial court did not abuse its discretion in not awarding custody of Jayden to Justin, in not modifying child support, and in not awarding Justin attorney fees. Moreover, we find the trial court did not abuse its discretion in denying Justin's pretrial motions for appointment of a Rule 706 expert, for a Rule 35 examination of Jayden, and for an appointment of a guardian ad litem for Jayden. As such, we additionally conclude that the trial court did not abuse its discretion in denying Justin's motion to continue trial, motion to alter or amend, and motion for new trial.

AFFIRMED.